### BULIN POLLARD v. THE STATE.

No. 4866.   Decided January 30, 1918.

**Murder—Self-defense—Sufficinecy of the Evidence.**

Where, upon trial of murder, defendant pleaded self-defense, but the evidence, although conflicting, was sufficient to sustain the conviction for murder, there was no reversible error.

Appeal from the District Court of Limestone. Tried below before the Hon. A. M. Blackmon.

Appeal from a conviction of murder; penalty, twenty-five years imprisonment in the penitentiary.

The opinion states the case.

No brief on file for appellant.

*E. B. Hendricks*, Assistant Attorney General, for the State.

PRENDERGAST, Judge.—Appellant was convicted of murder and assessed the lowest punishment.

There are no bills of exception and no complaint of the court's charge. Appellant's sole defense was self-defense.

The testimony by the State was sufficient to show, and for the jury to believe, that deceased went in a buggy with Mr. Basham to a store at Froza to get some articles for a sick person. Deceased merely went along to accompany his friend. They drove up in front of the store, Mr. Basham got out and went in to get the articles. Deceased, Clyde Tribbell, remained seated in the buggy. Shortly before they reached Froza they met appellant. When appellant rode up to the store he got down, hitched his horse, and walked upon the gallery of the store. · Deceased was sitting in the buggy right at the gallery. Mr. Basham testified that appellant said to deceased, "Hello boy." Deceased replied, "Howdy Bulin." . . . "The next I heard was Bulin telling him that he had heard a damn lie, and then he asked the deceased if he wanted to get out and shoot it out then, or words to this effect. . . . Clyde told him he did not have anything to shoot with. They talked on for some time, but I could not understand much of what they were saying. I did not see Clyde strike the defendant. The next thing I noticed was Clyde got out of the buggy and disappeared." This witness did not see anything else that happened but heard a racket out there—"sounded like somebody beating on something, then I heard a shot, then a second shot fired by Bulin."

Mr. Frank Tribbell, father of deceased, testified to the dying declarations of the deceased. His testimony was as follows: "He told me he was sitting near the store gallery in the buggy, and Bulin Pollard walked back to him and told him he understood that he, Clyde, was going to waylay and kill him. Clyde said he told him he had never made any such remark; had never said anything of the kind and was not caring anything about it, and Bulin then called him a crazy son-of-a-bitch and threatened to whip him before the Froza people knew it. Clyde said he jerked up the buggy whip and hit Bulin, and the whip broke, then he stooped over to pick up a piece of plank, when Bulin fired the first shot. That shot went through his hat. (I have the hat.) Clyde asked Bulin not to shoot that he did not have anything. Bulin told him to drop the plank, and when he dropped the plank and raised up, Bulin shot him in the neck."

Appellant's testimony was as follows: "Well, when I rode up to the store I got down off my horse. I saw Clyde Tribbell sitting there in the buggy. I faced him and spoke to him. I said, 'Good evening,' and he said, 'Don't speak to me.' I walked up on the gallery then and he followed me with the buggy whip. He hit me about three times and broke the buggy whip, then he jumped off the gallery and got a piece of plank and came back at me, and when he came at me again

I told him once to stop and he did not do it and I shot him. . . . When Clyde was striking me with this whip I threw up my arm and tried to protect myself, and backed off. He got this piece of plank and came back at me before I ever drew my pistol and shot. I suppose this plank was about four inches wide by three and a half or four feet long, and I do not know how thick it was."

Each side introduced more or less evidence tending to support their respective testimony as to the facts.

The credibility of the witnesses and the weight to be given to their testimony was for the jury. The evidence was sufficient to sustain the verdict.

The judgment is affirmed.

*Affirmed.*